MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
FELIPE UPON JOCHOLA, OTTONIEL
RAMOS BATEN, MIGUEL FRANCISCO
AJPOP, and ROMAN PAJARITO,
*individually and on behalf of others similarly*
*situated,*

|  |  |
|---|---|
| | *Plaintiffs*, |

-against-

GREEN SUMMIT GROUP LLC (d/b/a
GREEN SUMMIT ), CITY BARN GROUP
LLC.(d/b/a CITY BARN KITCHEN), BLACK
LEXINGTON GROUP, LLC. (d/b/a GREEN
SUMMIT), PETER SHATZBERG, and
TODD MILLMAN

*Defendants.*

--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b) AND RULE 23
CLASS ACTION**

**ECF Case**

Plaintiffs Felipe Upon Jochola, Ottoniel Ramos Baten, Miguel Francisco Ajpop and

Roman Pajarito (collectively "Plaintiffs"), individually and on behalf of others similarly

situated by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against Green Summit Group LLC (d/b/a Green Summit), Black

Lexington Group, LLC (d/b/a/ Black Lexington), City Barn Group LLC. (d/b/a City Barn

Kitchen) ("Corporate Defendants"), Peter Shatzberg, and Todd Millman ("Individual

Defendants") (collectively "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants Green Summit Group LLC (d/b/a

Green Summit), Black Lexington Group, LLC (d/b/a/ Black Lexington), City Barn Group

LLC. (d/b/a City Barn Kitchen), Peter Shatzberg and Todd Millman.

2.    Defendants owned, operated or controlled a catering company located at 144 East 44th Street, New York, NY 10017 under the name Green Summit (hereinafter the catering company location"), and a restaurant previously located at 16 West 45th Street, New York, NY 10036 under the name "City Barn Kitchen" (hereinafter "the restaurant location").

3.    Upon information and belief, individual Defendants Peter Shatzberg, and Todd Millman served as owners, managers, principals or agents of Defendant Corporations and, through these corporate entities operated the Catering Company and the restaurant as joint or unified enterprises.

4.    Plaintiffs were ostensibly employed as  delivery workers; however, they were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including but not limited to various us restaurant duties such as, cutting bread, sweeping and mopping, cleaning the bathroom, arranging deliveries packages, cleaning the walls, cleaning the bathroom and the basement, wrapping food, taking out the garbage and stocking incoming merchandise (hereafter the "non-tipped, non-delivery duties").

5.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage for the hours that they worked.

6.    Rather, Defendants failed to maintain accurate recordkeeping of their hours worked, and failed to pay Plaintiffs appropriately for any hours worked, at the appropriate rate of pay.

7.    Defendants employed and accounted for Plaintiffs as delivery workers but in actuality their duties required greater or equal time spent performing the non-tipped non-delivery functions described above.

8.      Regardless, at all times Defendants paid Plaintiffs at a rate that is below the minimum wage rate.

9.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs actual duties in payroll records to avoid paying them at the minimum wage rate and to enable them to pay these Plaintiffs at a rate that was below the minimum wage rate by designating them as delivery workers instead of non-tipped employees.

10.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

11.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

12.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work without providing the minimum wage required by federal and state law and regulations.

13.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees, and costs.

14.     Plaintiffs seek certification of this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a catering company and a restaurant both of which were located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

17.    Plaintiff Felipe Upon Jochola ("Plaintiff Upon" or "Mr. Upon") is an adult individual residing in New York County, New York. Plaintiff Upon was employed by Defendants from approximately August 2014 until on or about June 28, 2017 at the City Barn and Green Summit locations.

18.    Plaintiff Ottoniel Ramos Baten ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in New York County, New York. Plaintiff Ramos was employed by Defendants from approximately July 2016 until on or about June 28, 2017 at the Green Summit location.

19.    Plaintiff Miguel Francisco Ajpop ("Plaintiff Ajpop" or "Mr. Ajpop) is an adult individual residing in New York County, New York. Plaintiff Ajpop was employed by Defendants from approximately January 2013 until on or about December 22, 2017 at the Green Summit location.

20.     Plaintiff Roman Pajarito ("Plaintiff Pajarito" or "Mr. Pajarito") is an adult individual residing in Bronx County, New York. Plaintiff Pajarito was employed by Defendants from approximately December 2015 until on or about December 22, 2017 (with a hiatus of approximately 3 months in 2017) at the Green Summit location.

21.     Plaintiffs consent to being party plaintiffs pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

22.     At all relevant times, Defendants owned, operated, and/or controlled a catering service located at 144 East 44th Street, New York, NY 10017 under the name Green Summit, and a restaurant located at 16 West 45th Street, New York, NY 10036 under the name City Barn Kitchen, respectively.

23.     Upon information and belief, Defendant Green Summit Group LLC (d/b/a Green Summit) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 144 East 44th Street, New York, NY 10019, and its corporate headquarters and process address at the same address.

24.     Upon information and belief, Defendant Black Lexington Group, LLC (d/b/a/ Black Lexington) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 144 East 44th Street, New York, NY 10019.

25.     Upon information and belief, Defendant City Barn Group LLC. (d/b/a City Barn Kitchen) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its Principal place of business at 144 East

44th Street, New York, NY 10019, and its corporate headquarters at 16 West 45th Street, New York, NY 10036.

26.    Defendant Peter Shatzberg is an individual engaging in business in this judicial district during the relevant time period.  Defendant Peter Shatzberg is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Shatzberg possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Shatzberg determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

27.    Defendant Todd Millman is an individual engaging in business in this judicial district during the relevant time period.  Defendant Todd Millman is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Todd Millman possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Todd Millman determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

28.    Defendants owned and operated a catering company and a restaurant both of which were located in midtown Manhattan in New York City.

29.    The Individual Defendants, Peter Shatzberg and Todd Millman possessed operational control over Defendant Corporations, possessed ownership interests in Defendant Corporations, and controlled significant functions of Defendant Corporations.

30.    Defendants possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

31.    Defendants employed Plaintiffs, and all similarly situated individuals, and were Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

32.    Upon information and belief, Individual Defendants Peter Shatzberg and  Todd Millman operated Defendant Corporations as either alter egos of themselves, and/or failed to operate Defendant Corporations as entities legally separated and apart from themselves, by among other things,

      a.    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations,

      b.    defectively forming or maintaining Defendant Corporations by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

      c.    transferring assets and debts freely as between all Defendants,

      d.    operating Defendant Corporations for their own benefit as the sole or majority shareholders,

      e.    operating Defendant Corporations for their own benefit and maintaining control over these entities as  closed corporations,

f.   intermingling assets and debts of their own with Defendant Corporations,

g.   diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests, and

h.   Other actions evincing a failure to adhere to the corporate form.

33.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

34.   In each year from 2013 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that were separately stated).

35.   In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. As an example, numerous items that were used in the catering company and the restaurant on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

36.   The Plaintiffs are former employees of defendants employed ostensibly as delivery workers. However, Plaintiffs spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

37.   They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Felipe Upon Jochola*

38.   Plaintiff Upon was employed by defendants from approximately August 2014 until on or about June 28, 2017. During the course of his employment, Plaintiff Upon worked

at defendants' restaurant City Barn located at 16 West 45th Street, New York, NY 10036 from approximately August 2014 until on or about August 2015, and at defendants' corporation Green Summit located at 144 East 44th Street, New York, NY 10019 from approximately September 2015 until on or about June 28, 2017.

39.    Defendants ostensibly employed Plaintiff Upon as a delivery worker.

40.    Although Plaintiff Upon was ostensibly employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work.

41.    Plaintiff Upon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

42.    Plaintiff Upon's work duties required neither discretion nor independent judgment.

43.    From approximately August 2014 until on or about October 2014, Plaintiff Upon worked from approximately 9:30 a.m. until on or about 4:00 p.m. Mondays through Fridays (typically 32.5 hours per week).

44.    From approximately October 2014 until on or about August 2015, Plaintiff Upon worked from approximately 9:30 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 27.5 hours per week).

45.    From approximately September 2015 until on or about June 28, 2017, Plaintiff Upon worked from approximately 9:30 a.m. until on or about 2:00 p.m. Mondays through Fridays (typically 22.5 hours per week).

46.    Throughout his employment with defendants, Plaintiff Upon was paid his wages by check.

47.    From approximately August 2014 until on or about December 2015, defendants paid Plaintiff Upon $5.65 per hour.

48.    From approximately January 2016 until on or about December 2016, defendants paid Plaintiff Upon $7.50 per hour.

49.    From approximately January 2017 until on or about June 28, 2017, defendants paid Plaintiff Upon $9.15 per hour.

50.    Plaintiff Upon was never notified by Defendants that his tips were being included as an offset for wages.

51.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Upon's wages.

52.    In addition, Defendants withheld about 4% of all the daily tips clients paid Plaintiff Upon.

53.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Upon regarding the minimum wages under the FLSA and NYLL.

54.    Defendants did not give any notice to Plaintiff Upon, in English and in Spanish (Plaintiff Upon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

55.    Defendants required Plaintiff Upon  to purchase "tools of the trade" with his own funds—including a bicycle, 16 bicycles brakes, a helmet, two raincoats, a lock and chain and four pairs of bicycles tires.

*Plaintiff Ottoniel Ramos Baten*

56.    Plaintiff Ramos was employed by defendants from approximately July 2016 until on or about June 28, 2017 at Defendants Green Summit Corporation located at 144 East 44th Street, New York, NY 10019.

57.    Defendants ostensibly employed Plaintiff Ramos as a delivery worker.

58.     Although Plaintiff Ramos ostensibly was employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work.

59.     Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

60.     Plaintiff Ramos' work duties required neither discretion nor independent judgment.

61.     From approximately July 2016  until on or about June 28, 2017 Plaintiff Ramos worked at the Green Summit location, from approximately 10:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 25 hours per week).

62.     Throughout his employment with defendants, Plaintiff Ramos was paid his wages by check.

63.     From approximately July 2016 until on or about December 2016, Defendants paid Plaintiff Ramos $7.50 per hour.

64.     From approximately January 2017 until on or about June 28, 2017, Defendants paid Plaintiff Ramos $9.15 per hour.

65.     Defendants did not provide Plaintiff Ramos with each payment of wages a statement of wages, as required by NYLL 195(3).

66.     Plaintiff Ramos was never notified by Defendants that his tips were being included as an offset for wages.

67.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos' wages.

68.     In addition, Defendants withheld about 4% of all the daily tips clients paid Plaintiff Ramos.

69.     Defendants did not give any notice to Plaintiff Ramos, in English and in

Spanish (Plaintiff Ramos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Miguel Francisco Ajpop*

70.     Plaintiff Ajpop was employed by defendants from approximately January 2013 until on or about December 22, 2017 at Defendants Green Summit Corporation located at 144 East 44th Street, New York, NY 10019.

71.     Defendants ostensibly employed Plaintiff Ajpop as a delivery worker.

72.     Although Plaintiff Ajpop was ostensibly employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work.

73.     Plaintiff Ajpop regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

74.     Plaintiff Ajpop's work duties required neither discretion nor independent judgment.

75.     From approximately January 2013 until on or about December 2016 Plaintiff Ajpop worked at the Green Summit location, from approximately 3:00 p.m. until on or about 9:15 p.m. Mondays through Thursdays (typically 25 hours per week).

76.     From approximately January 2017 until on or about December 22, 2017, Plaintiff Ajpop worked at the Green Summit location, from approximately 5:30 p.m. until on or about 9:15 p.m. Mondays through Thursdays (typically 15 hours per week).

77.     Throughout his employment with defendants, Plaintiff Ajpop was paid his wages by check.

78.     From approximately January 2013 until on or about December 2016, Defendants paid Plaintiff Ajpop $5.65 per hour.

79.     From approximately January 2017 until on or about December 22, 2017, Defendants paid Plaintiff Ajpop $9.15 per hour.

80.     Defendants did not provide Plaintiff Ajpop with each payment of wages a statement of wages, as required by NYLL 195(3).

81.     Plaintiff Ajpop was never notified by Defendants that his tips were being included as an offset for wages.

82.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ajpop's wages.

83.     In addition, Defendants withheld about 4% of all the daily tips clients paid Plaintiff Ajpop.

84.     Defendants did not give any notice to Plaintiff Ajpop, in English and in Spanish (Plaintiff Ajpop's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

85.     Defendants required Plaintiff Ajpop to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a jacket, and two sets of lights.

*Plaintiff Roman Pajarito*

86.     Plaintiff Pajarito was employed by defendants from approximately December 2015 until on or about December 22, 2017 (with a hiatus of approximately 3 months in 2017) at Defendants Green Summit Corporation located at 144 East 44th Street, New York, NY 10019.

87.     Defendants ostensibly employed Plaintiff Pajarito as a delivery worker.

88.     Although Plaintiff Pajarito was ostensibly employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work.

89.     Plaintiff Pajarito regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

90.     Plaintiff Pajarito's work duties required neither discretion nor independent judgment.

91.     From approximately December 2015 until on or about December 22, 2017, Plaintiff Pajarito worked at the Green Summit location from approximately 10:00 a.m. until on or about 8:00 p.m. Mondays through Thursday (with a two-hour break) and from approximately 10:00 a.m. until on or about 2:00 p.m. Fridays (typically 36 hours per week).

92.     Throughout his employment with defendants, Plaintiff Pajarito was paid his wages by check.

93.     From approximately December 2015 until on or about May 2016, Defendants paid Plaintiff Pajarito $5.65 per hour.

94.     From approximately June 2016 until on or about December 2016, Defendants paid Plaintiff Pajarito $7.50 per hour

95.     From approximately January 2017 until on or about December 22, 2017, Defendants paid Plaintiff Pajarito $9.15 per hour.

96.     Defendants did not provide Plaintiff Pajarito with each payment of wages a statement of wages, as required by NYLL 195(3).

97.     Plaintiff Pajarito was never notified by Defendants that his tips were being included as an offset for wages.

98.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Pajarito's wages.

99.     In addition, Defendants withheld about 4% of all the daily tips clients paid Plaintiff Pajarito.

100.    Defendants did not give any notice to Plaintiff Pajarito, in English and in Spanish (Plaintiff Pajarito's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.    Defendants required Plaintiff Pajarito to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, a lock, a set of lights, four pairs of tires, a bell, two snow pants and two jackets.

*Defendants' General Employment Practices*

102.    Defendants regularly required their employees, including Plaintiffs, to work without paying them the required minimum wage.

103.    Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work without paying them appropriate minimum wage, as required by federal and state laws.

104.    Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

105.    At no time did defendants informed Plaintiffs that they reduced their hourly wage by a tip allowance.

106.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they make to customers.

107.    Furthermore, as part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving tipped workers of a portion of the tips earned during the course of employment.

108.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped workers, and other similarly situated employees, in violation of New York Labor Law § 196-d (2007).

109.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

110.    Defendants required all delivery workers, including Plaintiffs, to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers. Plaintiffs, and all similarly situated employees, were ostensibly employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-delivery, non-tipped duties.

111.    Plaintiffs and all other delivery workers were paid at the lower tip-credit rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because the delivery workers' and Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. § 146).

112.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

113.    The delivery workers', including Plaintiffs', duties were incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

114.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other delivery workers as tipped employees, and paid them at the tip-credited rate when they should classified them as non-tipped employees and paid them at the minimum wage rate.

115.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

116.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

117.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

118.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language (Spanish), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business

as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

119.    Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA and Rule 23 Class Period").

120.    At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 class were similarly situated in that they had substantially similar job requirements and pay provisions, and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage.

121.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

122.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

123.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and liquidated damages claims on behalf of all persons who were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

124.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

125.    There are questions of law and fact common to the Class including:

a.    What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.    What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.    What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.    Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e.    Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f.    At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the class members for their work; and

g.    What were the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

126.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime,

non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

127.    The representative parties will fairly and adequately protect the interests of the Class and had no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

128.    The common questions of law and fact predominate over questions affecting only individual members.

129.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

130.    Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

131.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

132.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the

power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

133.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

134.    Defendants constituted an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

135.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members), at the applicable minimum hourly rate.

136.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

137.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

140.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

141.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

142.    Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

143.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

144.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

145.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

- 22 -

146.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

147.    With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay and the number of regular hours worked, as required by NYLL 195(3).

148.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE TIP WITHHOLDING PROVISIONS

## OF THE NEW YORK LABOR LAW

149.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

150.    Defendants unlawfully and without permission from Plaintiffs misappropriated and withheld gratuities paid by customers which should had been retained by Plaintiffs.

151.    Defendants' actions violated NYLL §196-d.

152.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

153.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

154.    Defendants required Plaintiffs (and the FLSA and Rule 23 class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles and helmets, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

155.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 class members;

(e)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the

amount of unpaid minimum wages and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wages and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(h)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the FLSA and Rule 23 class members) compensation, hours, wages and any deductions or credits taken against wages;

(i)    Declaring that Defendants violated the tip withholding provisions of the New York Labor Law;

(j)    Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs(and the FLSA and Rule 23 class members);

(k)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wages, and for any improper deductions or credits taken against wages, under the NYLL, as applicable;

(l)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(m)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum

wages shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)    Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(o)    Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorneys' fees;

(p)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)    All such other and further relief as the Court deems just and proper

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury

Dated: New York, New York
         February 15, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    /s/ Michael Faillace
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone:    (212) 317-1200
       Facsimile:    (212) 317-1620
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

November 14, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                                Felipe Upon Jochola

                                            Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                                14 de noviembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

——————

Faillace@employmentcompliance.com

November 29, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Ottoniel Ramos  Baten

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              29 de Noviembre del 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

January 26, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Miguel Francisco Ajpop

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         26 de Enero del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 14, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Roman Pajarito Xochimitl

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     14 de Diciembre 2017

*Certified as a minority-owned business in the State of New York*